# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ANA LEDEZMA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-13-1806 |
| | § | |
| WELLS FARGO BANK, N.A., *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

This suit challenges Wells Fargo's foreclosure of a home. Jorge Ledezma, who is not a party to this suit, owned the home and signed the mortgage loan documents. Ana Ledezma, Jorge Ledezma's ex-wife, waived her rights to any interest in the property in the mortgage loan documents. When the couple divorced, Jorge Ledezma moved out and stopped making the mortgage payments. Ana Ledezma continued to live in the home. Wells Fargo, the mortgage-note holder, foreclosed. Ana Ledezma sued Wells Fargo and loan servicer Mortgage Electronic Registration Systems, Inc. ("MERS") in state court, challenging the foreclosure. (Docket Entry No. 1, Ex. 1). The defendants timely removed based on diversity of citizenship. (Docket Entry No. 1).

Ledezma agreed to dismiss her claims against MERS. Wells Fargo, the remaining defendant, moved for summary judgment on all Ledezma's claims. (Docket Entry No. 24).

Based on the pleadings; the motion, response, and reply; and the relevant law, Wells Fargo's motion for summary judgment, (Docket Entry No. 24), is granted, and Wells Fargo's request for attorney's fees and costs against Ana Ledezma is denied. Final judgment is entered by separate order. The reasons for these rulings are explained below.

1

## I.     Background

Jorge and Ana Ledezma purchased a home in Channelview, Texas in 2000. (Docket Entry No. 11, Ex. 1). In January 2003, Jorge Ledezma refinanced the home, signing two notes for loans totaling $99,000 from World Savings Bank, FSB, secured by two deeds of trust. (Docket Entry No. 24, Exs. A–D). World Savings Bank changed its name to Wachovia and subsequently merged into Wells Fargo. (Docket Entry No. 24). Wells Fargo owns both notes. (*Id.* at Ex. J).

Jorge and Ana Ledezma separated in 2010 and divorced in April 2011. (Ledezma Depo. at 17). Ana Ledezma stayed in the home and Jorge Ledezma moved out. Although Jorge Ledezma remained responsible for the mortgage payments, he stopped paying. Both loans were in default in late 2011. (Ledezma Depo. at 18, 118). Jorge Ledezma tried to obtain a loan modification through the Home Affordable Modification Program ("HAMP"), but his application was denied. (Docket Entry No. 11 at 3). Ana Ledezma retained a Florida law firm that she believed would help her get the loans transferred into her name or have a loan modification application submitted in her husband's name. (*Id.*).

Wells Fargo sent Jorge Ledezma a notice of default and intent to foreclose on the first lien on March 23, 2012 and a notice of default and intent to foreclose on the second lien on April 17, 2012. (Docket Entry No. 24, Exs. E, F). Both notices were delivered to the home. Jorge Ledezma did not cure the defaults. (*Id.*, Ex. J). On July 6, 2012, Wells Fargo's foreclosure representative notified Ana and Jorge Ledezma by certified letter delivered to the home that it was accelerating the notes and that the home would be sold at foreclosure on August 7, 2012. (*Id.*, Ex. G).

On July 12, 2012, Wells Fargo began the foreclosure process, appointing either Rex Kesler, T. Reder, or N. Sanchez as substitute trustees. (*Id.*, Ex. M). Kesler executed the Notice of

Substitute Trustee's Sale, which Wells Fargo recorded in the real property records of Harris County. (*Id.*, Ex. N).

Wells Fargo foreclosed on the second mortgage on August 7, 2012, subject to the first mortgage, and purchased the home at foreclosure for $7,506.39. (*Id.*, Ex. H). A tax appraisal valued the property at $93,355. (Docket Entry No. 11, Ex. F). Wells Fargo initiated eviction proceedings against Ana Ledezma and other occupants in December 2012 in state court. (Ledezma Depo. at 64). The trial court granted Wells Fargo possession and ordered Ledezma to move out. Ledezma appealed, but before the appeal was heard, Ledezma and Wells Fargo signed an Agreed Final Judgment on February 22, 2013, granting Wells Fargo possession and agreeing that Ledezma would leave by March 3, 2013. (Docket Entry No. 24, Ex. I). The Agreed Final Judgment contained the following handwritten language: "Notwithstanding the establishment of a superseding bond in exchange for additional time to vacate, Defendants agree to waive and do hereby waive any right to appeal hereof and/or to challenge the validity or finality thereof." (*Id.*).

Ledezma did not vacate the property and did not post a bond. Instead, she sued Wells Fargo and MERS in state court in June 2013, claiming wrongful foreclosure and violations of the Texas Debt Collection Act ("TDCA"). (Docket Entry No. 1, Ex. 1). Wells Fargo and MERS timely removed, and MERS was subsequently dismissed from the lawsuit. (Docket Entry No. 7). Wells Fargo filed multiple motions to dismiss, for summary judgment, and to abate. (Docket Entry Nos. 12, 23, 24). The most recent summary judgment motion, (Docket Entry No. 29), made the earlier motions moot.

**II.     The Legal Standard for Summary Judgment**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving

party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden "by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Although the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (internal quotation marks omitted). "'If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response.'" *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and explain how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary-judgment motion, the court draws all reasonable inferences in the

4

light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). Nevertheless, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

## III. Analysis

### A. The Wrongful Foreclosure Claims

Ledezma challenges the foreclosure of the home and alleges violations of the Texas Property Code. Wells Fargo challenges Ledezma's standing to pursue her claims.

"The issue of identifying who properly has standing to contest a foreclosure sale in Texas is well settled." *Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 489 (Tex. 1988). "As a general rule, only the mortgagor[, that is, the debtor,] or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to [a] deed of trust." *Id.* (citations omitted). "However, when the third party has a property interest, whether legal or equitable, that will be affected by such a sale, the third party has standing to challenge such a sale to the extent that its rights will be affected by the sale." *Id.*

Ledezma has not identified a legal or equitable property interest in the home. She had no lien or other interest in the property. *See Reeves v. Wells Fargo Home Mortg.*, 544 Fed. App'x 564 (5th Cir. 2013) (unpublished) (finding that a plaintiff who acquired a property interest through a recorded quit-claim deed and made payments on the related note had an equitable interest and could challenge the foreclosure sale); *Kiper v. BAC Home Loans Serv., LP*, 884 F. Supp. 2d 561 (S.D. Tex. 2012) (finding that the plaintiff had standing to challenge a foreclosure sale because his wife was the borrower on the loan and the signer on the deed of trust and the home was presumptively

5

community property); *Hitchclock Props., Inc. v. Levering*, 776 S.W.2d 236, 238 (Tex. App. — Houston [1st Dist.] 1989) ("Thus, if nothing else, the granting of an option [supported by consideration] creates an 'equitable' interest in land . . .").

Ledezma did not sign either of the notes or deeds of trust. Instead, she signed a Borrower Spouse Agreement contained in each deed of trust, stating that she "waive[d] any and all rights, interest or claims in the Property." (Docket Entry No. 24, Ex. 4). Because Ledezma waived any interest in the home, she lacks standing to contest the foreclosure sale on statutory or contractual grounds. Summary judgment is granted on Ledezma's wrongful foreclosure claims.

### B. The Breach of Contract Claim

Ledezma alleges that Wells Fargo breached the deeds of trust by failing to give her proper notice of default and an opportunity to cure, through HAMP or otherwise. Ledezma contends that she may enforce the deeds of trust because the foreclosure sale affected her right to remain in the home. Her argument fails to take into account the Borrower Spouse Agreements she signed. In those Agreements, Ledezma waived all rights or interests in the home. Because she has no rights that the foreclosure affected, she has no standing to assert her breach of contract claim.

Even if Ledezma had standing to assert her ex-husband's claims, summary judgment would be appropriate because Jorge Ledezma was in default and there is no challenge to the notices sent to him. A mortgager who defaults on the mortgage cannot maintain a cause of action against the note holder. *See Moe v. Option One Mortgage Corp.*, No. 14-07-00550-CV, 2009 WL 136892, at *3 (Tex. App. — Houston [14th Dist] 2009, no pet); *Kaechler v. Bank of Am.*, No. H-12-423, 2013 WL 127555, at *3 (S.D. Tex. Jan. 9, 2013).

Summary judgment is granted on these claims.

## C. The TDCA Claims

Wells Fargo moves for summary judgment on Ledezma's TDCA claims on the ground that she is not a "consumer" under the statute. The TDCA defines a consumer as "an individual who has a consumer debt." TEX. FIN. CODE § 392.001(1). A "consumer debt" is "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." *Id.* at § 392.001(2).

Ledezma claims that she is a consumer because she signed the second lien and previously owned the home. (Docket Entry No. 26 at 24). But the record shows that Ledezma did not sign either note or deed of trust. (Docket Entry No. 24, Exs. 2, 4). Instead, she signed Borrower Spouse Agreements stating that the rights and obligations under the deeds of trust were Jorge Ledezma's alone. (Docket Entry No. 24, Ex. I). Ledezma is not a consumer under the TDCA.

Courts have held that some individuals who are not consumers under the TDCA may assert claims under that statute that arise out of the "debtor/creditor relationship." *See Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 472 (S.D. Tex. 2012); *Prophet v. Myers*, No. H-08-0492, 2009 WL 1437799, at *5 (S.D. Tex. May 21, 2009). "Any person against whom the prohibited acts are committed may maintain an action for actual damages sustained as a result of those violations." *Campbell v. Beneficial Finance Co. of Dallas*, 616 S.W.2d 373, 375 (Tex. App. — Texarkana 1981, no writ). In *Campbell*, the plaintiff sued a bank for repeated telephone calls asking her to disclose contact information for her daughter and son-in-law, who had borrowed money from the bank and were in default. The court noted that "while the threat, coercion, harassment or abuse must occur in connection with the collection or attempted collection of a debt allegedly owed by a consumer, persons other than the debtor may maintain an action for violations of the Act." *Id*. The court held

that "[a]ny person against whom the prohibited acts are committed may maintain an action for actual damages sustained as a result of those violations." *Id*. The nondebtor plaintiff could sue the bank for the harassing phone calls because "[t]he alleged abuses were committed directly against her." *Id*.

In *Prophet*, a debtor's father sued a debt collector after the father found a demand letter addressed to his estranged son. *Prophet*, 2009 WL 1437799, at *5. In considering whether the plaintiff had standing, the federal court cited *Campbell* but distinguished it on the facts, noting that the debt collector in *Campbell* directed the harassment against the debtor's mother rather than the debtor. *Id*. By contrast, in *Prophet*, "the letter could only reasonably be interpreted to be directed to Plaintiff's son, as it was mailed to Plaintiff's son's address and pertained to a debt incurred by Plaintiff's son." *Id*. at *2. The court held that the plaintiff lacked standing under the TDCA because none "of the alleged abuses were directed against him." *Id*. at *5.

*Campbell* and *Prophet* make clear that a nonconsumer may pursue a TDCA claim only if abusive debt-collection practices are directed at that individual rather than at the debtor. Ledezma testified in her deposition that Wells Fargo did not try to collect the mortgage debt from her and did not use any deceptive means to collect her husband's debt. (Ledezma Depo. at 12, 36, 57). She does allege that the foreclosure notice sent to the home violated §§ 392.301(a)(4),(8), (14), and (19) of the TDCA because the notice did not comply with the HAMP Handbook statement that mortgage servicers must exhaust mitigation options for potential HAMP borrowers before foreclosing. (Docket Entry No. 11 at 7–8). The problem with Ledezma's argument is that even if the notice did not comply with the Handbook, there is no private right of action under HAMP. *Pennington v. HSBC Bank USA, N.A.*, 493 Fed. App'x 548, 551 (5th Cir. 2012); *see also Wigod v. Wells Fargo*

8

*Bank, N.A.*, 673 F.3d 547, 559 n. 4 (7th Cir. 2012) ("Courts have uniformly rejected these claims because HAMP does not create a private federal right of action for borrowers against servicers."); *Webb v. Wells Fargo Bank, N.A.*, No. H-12-0805, 2013 WL 145042, at *5 (S.D. Tex. Jan. 11, 2013) ("Failure to consider HAMP . . . options therefore would not have rendered a foreclosure action illegal."); *Burr v. JPMorgan Chase Bank, N.A.*, No. 4:11-cv-03519, 2012 WL 1059043, at *7 (S.D. Tex. March 28, 2012) (dismissing a borrower's claim under the TDCA, based on a violation of HAMP, because foreclosing on a borrower's home after the borrower admittedly defaulted on the loan is not an action prohibited by law); *Cade v. BAC Home Loans Servicing, LP*, No. H-10-4224, 2011 WL 2470733, at *5 (S.D. Tex. June 20, 2011) ("Foreclosure in the meantime, while possibly a violation of HAMP guidelines, does not give rise to a cause of action in the borrower."). And aside from this problem, Ledezma also lacks standing to sue on her ex-husband's claims related to his HAMP application or his right to cure the default. Summary judgment is granted on Ledezma's TDCA claims.

### D. The Redemption and Accounting Claims

Ledezma offered to "tender the arrears on the note the security for which Wells Fargo has wrongly exercised by foreclosure sale." (Docket Entry No. 11 at 10). Because summary judgment is granted on all of Ledezma's claims based on her lack of standing to assert them, her claim for redemption is dismissed.

The court also grants summary judgment on Ledezma's claim for an accounting. "An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Watson v. Citimortgage, Inc.*, 814 F. Supp. 2d 726, 738 (E.D. Tex. 2011) (citations omitted). An accounting as a separate cause of action in equity is proper "when the facts

9

and accounts in issue are so complex that adequate relief cannot be obtained by law." *Id.* "[W]hen a party can obtain adequate relief at law through the use of standard discovery procedures, such as requests for production and interrogatories" a court-ordered accounting is not warranted. *Id.* at 738. Ledezma does not have standing to redeem the mortgage notes, and she did not identify any necessary information she could not get through discovery.

F.     The *Rooker-Feldman* and Preclusion Arguments

Wells Fargo argues that Ledezma's claims are barred by the *Rooker-Feldman* doctrine because a state court suit granted Wells Fargo possession in an Agreed Final Judgment, and Ledezma agreed not to challenge or appeal. (Docket Entry No. 24, Ex. I). Wells Fargo also argues that the preclusion doctrines bar Ledezma's present suit. This court has granted summary judgment on other grounds and need not address these arguments in detail.[1]

G.     Wells Fargo's Attorneys' Fees Claim

---

[1] The *Rooker-Feldman* doctrine prevents federal courts from modifying or reversing state court judgments absent congressional authorization. *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 462 (5th Cir. 2004) (internal quotation marks and citation omitted). The doctrine is narrow and "confined to . . . . cases brought by state court-losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The state-court suit was a forcible-detainer action that decided immediate possession. Any defects in the foreclosure process or with the possessor's title to the property had to be decided in a separate suit. *See Saenz v. U.S. Bank Nat. Ass'n*, No. 02-13-00221-CV, 2014 WL 1096042, at *2 (Tex. App. — Fort Worth Mar. 20, 2014, pet. dism'd w.o.j.) (mem. op.). Ledezma does not challenge the validity of the Agreed Final Judgment granting Wells Fargo possession. Instead, she argues that Wells Fargo fraudulently and improperly foreclosed. The *Rooker-Feldman* doctrine does not bar these claims. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383–85 (5th Cir. 2013) (holding that the *Rooker-Feldman* doctrine did not apply when a plaintiff asserted claims for fraudulent debt collection practices despite a state-court foreclosure judgment because the plaintiff "did not seek to overturn the state-court judgment, and the damages she requested were for injuries caused by the bank's actions, not injuries arising form the foreclosure judgment.").

Nor does claim preclusion appear to bar Ledezma from proceeding. Because Ledezma could not have asserted her wrongful foreclosure and TDCA claims in the earlier state-court action, claim preclusion does not apply here.

Wells Fargo seeks an award of the attorneys' fees it incurred in defending against Ledezma's claims. Texas law allows a party to recover attorneys' fees when provided by statute or by contract. *In re Velazquez*, 660 F.3d 893, 895–96 (5th Cir. 2011). Wells Fargo argues the deeds of trust authorize the fee award it seeks. (Docket Entry No. 24 at 46–48). But Ledezma did not sign the deeds of trust. Wells Fargo's claim for attorneys' fees against Ledezma is denied.

## III. Conclusion

For the reasons stated above, Wells Fargo's summary judgment motion is granted and its request for attorney's fees is denied. Final judgment is entered by separate order.

SIGNED on November 24, 2014, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge